UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:18-CR-00017-GNS-HBB

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

CHARLES SAMUEL POPE                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Objection (DN 52) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation ("R&R") (DN 49) on Defendant's Motion to Suppress (DN 34). For the following reasons, the Court **OVERRULES** the Objection, **ADOPTS** the R&R, and **DENIES** the Motion to Suppress.

**I.     BACKGROUND**

The facts of this case are essentially undisputed. On June 10, 2008, Charles Samuel Pope ("Pope") was sentenced to 102 months' imprisonment, to be followed by a life term of supervised release, for the receipt of child pornography. (Def.'s Obj. 1, DN 52; R&R 1, DN 49). Following incarceration, Pope was subject to the following relevant conditions: (1) an officer may conduct a search of Pope's home and car "only when reasonable suspicion exists that the defendant has violated a condition of [his] release and that the areas to be searched may contain evidence of this violation[;]" and (2) Pope "shall be subject to . . . Computer Voice Stress Analysis . . . for supervision, case monitoring, and treatment at the discretion and direction of the U.S. Probation Officer. . . . No violation proceedings will arise solely on [Pope]'s failure to pass an examination. No violation proceeding will arise on [Pope]'s refusal on valid Fifth Amendment grounds to answer questions." (Def.'s Mot. Suppress Ex. 1, at 2-3, DN 34-1 (emphasis added)).

On January 30, 2018, Pope reported to the United States Probation Office to complete a Computerized Voice Stress Analyzer ("CVSA") exam. (Def.'s Mot. Suppress 3, DN 34; R&R 2). During the exam, Pope was asked whether he had unauthorized access to the Internet on any unapproved device since his last CVSA exam. (Def.'s Mot. Suppress Ex. 1, at 4). Pope responded in the negative, to which the exam indicated "deception" in his answer. (Def.'s Mot. Suppress Ex. 1, at 4). Pope responded in the same way when asked whether he had unauthorized access to the Internet on any unapproved gaming console, to which the exam indicated deception, as well. (Def.'s Mot. Suppress Ex. 1, at 4).

After the exam, Probation Officer Kyle Rowland ("Rowland") informed Pope that he had failed the test, following which Pope signed a consent-to-search form. (R&R 5). A search of Pope's car revealed a cell phone with Internet access belonging to his mother. A search of Pope's residence revealed a multitude of electronic devices with Internet access hidden between the mattress and box springs in Pope's bedroom. Pope now moves to suppress this evidence in the underlying indictment for possession of child pornography.

The United States mainly asserts that Pope's responses on the CVSA exam and that exam's results provided the reasonable suspicion necessary for the United States to search Pope's home and car and recover multiple unauthorized electronic devices. Pope refutes the existence of reasonable suspicion allowing the United States to search his home and car, citing the unreliability of CVSA exams.

## II. DISCUSSION

A magistrate judge's report and recommendation on dispositive motions, such as a motion for the suppression of evidence, is subject to de novo review by the district court. *United States v.*

*Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The issue before the Court in this case is whether the United States possessed the reasonable suspicion necessary to search Pope's home and car.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). "For purposes of the Fourth Amendment, an individual's violating the terms of his supervised release is comparable to his violating a criminal statute." *United States v. Hilton*, 625 F. App'x 754, 758 (6th Cir. 2015) (citing *United States v. Herndon*, 501 F.3d 683, 689 (6th Cir. 2007)). "[F]or constitutional purposes, a search based on reasonable suspicion can be used to seek evidence of either a violation of a criminal statute or a supervised release violation." *Id*. (citing *Herndon*, 501 F.3d at 689-90). In sum, it is constitutional to impose a "reasonable suspicion" standard for warrantless searches of the home of an individual on supervised release.

"Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *Northrop v. Trippett*, 265 F.3d 372, 381 (6th Cir. 2001) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The government "must be able to

3

point to specific and articulable facts, together with rational inferences drawn from those facts, that reasonably suggest criminal activity has occurred or is imminent." *Id*.

Pope has generally questioned the existence of reasonable suspicion for the search of his home and car, but the focus of the case has turned on whether the results of a CVSA exam give rise to the necessary reasonable suspicion for such a search. In the face of Pope's challenge to the reliability of the CVSA exam, the Magistrate Judge found that Pope had essentially waived this challenge by not objecting to the conducting of such an exam for "supervision" purposes as a condition of his supervised release. (R&R 12-13). Because this Court had already specified that the CVSA exam was an appropriate means by which to supervise Pope during his release, the Magistrate Judge concluded, Pope's challenge to the presence of reasonable suspicion to search his home was unavailing. *See United States v. Beyers*, No. 13-00349-01-CR-W-GAF, 2014 U.S. Dist. LEXIS 115224, at *16 (W.D. Mo. July 30, 2014), *adopted* 2014 U.S. Dist. LEXIS 114711 (W.D. Mo. Aug. 19, 2014) (holding the results of a polygraph exam can factor into a reasonable suspicion determination when submission to a polygraph exam is a condition of probation for "[i]t would make no sense to routinely require such a condition, but then conclude that a probationer's responses are meaningless."). The Court agrees with the Magistrate Judge's conclusion in this regard.

Although the focus of the case has been on the reliability of CVSA exams and whether their results can give rise to reasonable suspicion, the Court believes the record reflects the existence of reasonable suspicion even without the CVSA results. On December 13, 2017, six weeks before the CVSA test, Rowland conducted a search of Pope's residence, which Pope has not alleged was unconstitutional. (R&R 3). Pope lived with his mother and, when Rowland arrived at the residence, Pope's mother answered the door, and invited Rowland in. As he entered,

4

Rowland observed Pope running from the back of the house to the living room, wearing only a pair of jeans and appearing wet. Pope picked up what looked like a gaming controller, placing it in a storage cube and "kind of slamm[ing] the top to the cube down." When Rowland questioned Pope about the storage cube, Pope claimed ignorance. Rowland asked Pope to open the cube, which Pope opened slightly, then closed again. Suspicious? At least a bit. Rowland then asked Pope to remove the top, which Pope did, and Rowland observed a gaming controller and PS4[1] games. Although no gaming device capable of accessing the Internet was found in the storage cube, the gaming controller and games are accessories necessary for the use of such devices. One of the conditions of Pope's supervised release was that "[t]he defendant shall not possess or use a computer or any device with access to any on-line computer service at any location . . . without the prior written approval of the probation officer." (Def.'s Mot. Suppress Ex. 1, at 2).

Upon Rowland's discovery of the games, Pope said that they belonged to his niece and nephew and had been in the cube prior to Pope's release from prison. (R&R 3). Rowland later investigated the game titles and discovered that at least one of the games had been first sold after Pope's release from prison. Thus, not only did Pope attempt to conceal the contents of the storage cube from Rowland, he also lied about the video games found in the cube.

Pope's challenge to the existence of reasonable suspicion in this case specifically targets the CVSA exam and its unreliability. Even without the failed CVSA exam, however, Rowland had firsthand knowledge that inside Pope's residence were games and a gaming controller to a device capable of accessing the Internet. Pope initially attempted to hide that information from Rowland, and when that did not work, Pope claimed the games had been in the storage cube prior to his release from prison, which Rowland subsequently determined was false.

---

[1] Sony PlayStation 4 gaming device.

Pope's attempt to conceal the contents of the storage cube from Rowland, the nature of the equipment found inside, and Pope's lie to Rowland regarding the vintage of the PS4 games, revealed "specific and articulable facts, together with rational inferences drawn from those facts, that reasonably suggest[ed] criminal activity [had] occurred or [was] imminent." *Trippett*, 265 F.3d at 381 (quoting *Cortez*, 449 U.S. at 417-18). One of the conditions of Pope's supervised release was "[t]he defendant shall not possess or use a computer or any device with access to any on-line computer service at any location . . . without the prior written approval of the probation officer." (Def.'s Mot. Suppress Ex. 1, at 2). Rowland found equipment reasonably suggesting that Pope had access to a gaming device for Internet use that he was prohibited from possessing, and Rowland also determined that Pope had lied about the video games. Possession of recently released video games strongly suggests possession of a gaming console in violation of Pope's conditions of supervision. Under these circumstances, Rowland had reasonable suspicion to conduct a search of Pope's home. (Hr'g Tr. 38:15-22, DN 47). Thus, even without the failed CVSA exam, the Court would still find reasonable suspicion to search Pope's home based on his encounter with Rowland before the CVSA exam.

To the extent that there is question about the six-week period between the discovery of the PS4 games and controllers and the execution of the search, the Sixth Circuit provided guidance in *United States v. Redmond* as to the analysis to determine whether facts giving rise to a warrantless search have become "stale" so as to dispel the reasonable suspicion[2] necessary to execute such a search:

---

[2] Although the Court in *Redmond* discussed this issue in the context of determining whether "probable cause" existed for issuance of a search warrant, the factors used to judge the staleness of a warrantless search based on reasonable suspicion would appear analogous. *United States v. Redmond*, 475 F. App'x 603, 608 (6th Cir. 2012).

> Facts that at one time supported probable cause can over time become stale where they are not "so closely related to the time of the [search] so as to justify a finding of probable cause at that time." The dissipation of probable cause is determined by various factors including "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)." "The passage of time is less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime."

*Redmond*, 475 Fed. App'x at 608 (citations omitted). Application of these factors to this case supports the conclusion that the reasonable suspicion generated from the information Rowland obtained during the home visit in December 2017, did not dissipate by the time the search of Pope's home was executed the following month. The character of Pope's crime was the possession of unauthorized devices, devices that would seemingly remain in his possession indefinitely. Pope himself was "entrenched" in his home, which would constitute a "secure operational base[,]" serving as the location for the placement and holding of those devices. Such facts do not dissipate the existence of reasonable suspicion to search Pope's home just six weeks after discovering that information. As such, the Court accepts the Magistrate Judge's conclusion that reasonable suspicion existed to search Pope's home.[3]

At the hearing before the Magistrate Judge, Pope suggested that he had been coerced into consenting to the search both by the actions of the officers and by the fact that his supervised release could have been revoked if he refused to consent to a search, in addition to suggesting that his consent was not intelligently given for lack of understanding of his constitutional rights at the time. (Hr'g Tr. 48:20-58:8). "The government bears the burden of demonstrating by a

---

[3] This rationale cannot apply to the search of Pope's car, however, because discovery of the PS4 games and controller in the home would not suggest that Pope had an unauthorized device in his car.

preponderance of the evidence, through 'clear and positive testimony,' that the consent [to search] was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress of coercion." *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (quoting *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999)) (citing *United States v. Hudson*, 405 F.3d 425, 443 (6th Cir. 2005)). "Whether these requirements were met 'is a question of fact to be determined from the totality of all the circumstances . . . .'" *Id*. (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Because the United States—the party with the burden to establish Pope's consent to the search—has never really addressed Pope's argument in this regard, the Court will accept Pope's contention that his purported consent was invalid. Regardless, having determined that reasonable suspicion existed both because of the CVSA results and because of the circumstances observed by Rowland in Pope's residence on December 13, 2017, the search of the residence on January 30, 2018, was valid, and no consent was necessary.

For these reasons, the Court adopts the recommendation of the R&R. Pope's suppression motion will be denied.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 49) is **ADOPTED**, and Defendant's Motion to Suppress (DN 34) is **DENIED**.

2. Defendant's Objection (DN 52) is **OVERRULED**.

Greg N. Stivers, Chief Judge
United States District Court

cc: counsel of record

October 8, 2019

8